B27 (Official Form 27) (12/09)

# United States Bankruptcy Court
# EASTERN District of WISCONSIN

In re Katherine & Steven Kirkbride,   Case No. 11-30495
        Debtor                         Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

→ 1. Creditor's Name: Landmark Credit Union
2. Amount of the debt subject to this reaffirmation agreement:
   $18,016.31(principal) on the date of bankruptcy   $17,552.15(payoff 07/15/11) to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 7.90% prior to bankruptcy
   7.90 % under reaffirmation agreement (X Fixed Rate ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $596.46 per month commencing 08/07/11 until paid in full.

→ 6. Collateral, if any, securing the debt: Current market value: $29,450.00
   Description: 2009 Honda Pilot

7. Does the creditor assert that the debt is nondischargeable? ___ Yes X No
   (If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)   N/A BECAUSE CREDITOR IS A CREDIT UNION

| Debtor's Schedule I and J Entries | Debtor's Income and Expenses as Stated on Reaffirmation Agreement |
|---|---|
| 7A. Total monthly income from $5,285.92 Schedule I, line 16 | 7B. Monthly income from all sources after payroll deductions $5285.92 |
| 8A. Total monthly payments on $5,288.00 from Schedule J, line 18 | 8B. Monthly expenses $5258.00 |
| 9A. Total monthly payments on $0 reaffirmed debts not listed on Schedule J | 9B. Total monthly payments on $___ reaffirmed debts not included in monthly expenses |
| | 10B. Net monthly income $27.92 (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) |

11. Explain with specificity any difference between the income amounts (7A and 7B):
    No change
    N/A

12. Explain with specificity any difference between the expense amounts (8A and 8B):
    Now using coupons for with groceries to help reduce food expense.
    N/A

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

_____          _____
Signature of Debtor (only required if            Signature of Joint Debtor (if applicable,
line 11 or 12 is completed)                              and only required if line 11 or 12 is completed)

Other Information

N/A ☐ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is the credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: _____

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
☒ Yes　　　　　___ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
☒ Yes　　　　　___ No

## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

_____
Signature

STEVEN E. BERG, ATTY. FOR DEBTORS
Print/Type Name & Signer's Relation to Case

Check one.
☐ Presumption of Undue Hardship
☑ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
### Eastern District of Wisconsin

In re Katherine & Steven Kirkbride,
*Debtor*

Case No. 11-30495

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Landmark Credit Union

☑ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: Vehicle loan dated 09/23/2008

*For example, auto loan*

B. ***AMOUNT REAFFIRMED***: $ 17,552.15

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 07/15/2011, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is 7.90 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐ $_____ per month for _____ months starting on_____.

☒ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

$596.46 per month commencing 08/07/11 until paid in full

E. Describe the collateral, if any, securing the debt:

| | |
|---|---|
| Description: | 2009 Honda Pilot |
| Current Market Value | $ 29,450.00 |

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☒ Yes. What was the purchase price for the collateral?     $ 34,044.00

☐ No.  What was the amount of the original loan?          $_____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 17,552.15 | $ 17,552.15 |
| Annual Percentage Rate | 7.900 % | 7.90 % |
| Monthly Payment | $ 596.46 | $ 596.46 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one.  ☒ Yes    ☐ No

B. Is the creditor a credit union?

Check one.  ☒ Yes    ☐ No

N/A

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

   a. Monthly income from all sources after payroll deductions
   (take-home pay plus any other income)                                    $_____

   b. Monthly expenses (including all reaffirmed debts except
   this one)                                                                $_____

   c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $_____

   d. Amount of monthly payment required for this reaffirmed debt           $_____

   *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

   Check one of the two statements below, if applicable:

   [X] You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

   [ ] You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

   Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

[X] You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

   (1)   I agree to reaffirm the debt described above.

   (2)   Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

   (3)   The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

   (4)   I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

   (5)   I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date  8/18/11        Signature _____
                                         Debtor
Date  8/18/11        Signature _____
                                         Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor  Landmark Credit Union            P.O. Box 510870 New Berlin, WI 53151-0870
            *Print Name*                                   *Address*

          Paul Peterson                               _____  07/15/2011
     *Print Name of Representative*                          *Signature*                   *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

   *To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 8/22/2011   Signature of Debtor's Attorney _____
                 Print Name of Debtor's Attorney  ~~Todd Esser~~  Steven E. Berg

## CONFIRMATION OF SECURITY INTEREST (LIEN) PERFECTION   T084 10/2004 s.342.20(3)Wis. Stats.

**DEBTOR NAME AND ADDRESS**  This lien has been recorded with the Wisconsin Department of Transportation.

KIRKBRIDE KATHERINE A
KIRKBRIDE STEVEN A
W277N1644 LAKE VIEW DR
PEWAUKEE WI 53072-5248



| Year | Make | Body Style | Vehicle Identification Number | County of Debtor Residence WAUKESHA | |
|---|---|---|---|---|---|
| 2009 | HOND | LL | 5FNYF48519B024654 | Secured Party No. 27779 | Date Printed 10/11/08 |

**SECURED PARTY (LIENHOLDER) NAME AND ADDRESS**

LANDMARK CREDIT UNION
2775 S MOORLAND RD
NEW BERLIN WI 53151

Lending Agency:  Retain this document until the lien has been satisfied. See reverse side of this form for removing this lien. Valid lien release only if signed on reverse side.

# MOTOR VEHICLE CONSUMER SIMPLE INTEREST INSTALLMENT SALE AND SECURITY AGREEMENT

## 1. CREDIT SALE AGREEMENT

Goods Sold and Credit Request. I purchased from the undersigned seller ("Seller") at the price and on the terms of a separate purchase agreement the following goods, and I acknowledge receipt of them, in satisfactory condition. I request that the sale be financed on the terms of this Agreement and agree that all terms and conditions of the purchase agreement, other than financial terms and conditions, survive the execution of this Agreement. I agree to pay to Seller the Amount Financed shown on line 2(g), plus interest, according to the Payment Schedule shown below. This Agreement bears interest at the rate of _____% per year on the unpaid balance until the scheduled date of the final installment and after that date at the default rate of 7.90 % per year until paid. I agree to pay the Late Charge shown below. I also agree to pay a charge of $ 15.00 as permitted under §422.202(1)(d), Wis. Stats., for each check presented for payment under this Agreement which is returned unsatisfied. Payments shall be applied (to the extent not prohibited by the Wisconsin Consumer Act) in such order as Seller elects to charges and amounts due under this Agreement. Amounts disclosed in Sections 2 and 3 are computed on the assumption that all installments will be paid when due.

| NEW OR USED | YEAR | NO. CYL | MAKE-TRADE NAME | BODY STYLE (IF TRUCK, TONS CAPACITY) | MODEL | SERIAL NUMBER OR IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|
| NEW | 2009 | 6 | HONDA | 5DR 4WD LX-L A1 | PILOT | 5FNYF485198024654 |

If applicable, titled or to be titled in name of KATHERINE A KIRKBRIDE OR STEVEN A KIRKBRIDE

### 2. ITEMIZATION OF AMOUNT FINANCED AND OTHER CHARGES

(a) Cash Price ............................................................................. (a) $ 34044.00
(b) Trade-In: (1) Year _____ Make _____ Model _____
 Allowance $ N/A  – Lien/Lease Payoff $ N/A
 Owes to _____
 Net Positive Trade-In Value of $ N/A
 Trade-In: (2) Year _____ Make _____ Model _____
 Allowance $ N/A  – Lien/Lease Payoff $ N/A
 Owes to _____
 Net Positive Trade-In Value of $ N/A
 Net Positive Trade-In Value (1)+(2) ................................................ (b) $ N/A
(c) Total Cash Received $ 6000.00 (includes factory or manufacturer rebate of $ N/A ) (c) $ 6000.00
(d) Downpayment: Cash $ 6000.00 + Net Positive Trade In Value $ N/A = Total Downpayment of (d) $ 6000.00
(e) Amount paid to Seller (a - d) .................................................... (e) $ 28044.00
(f) Amounts paid to others on my behalf which are being financed:

|  | Paid in Cash Not Financed | Being Financed |
|---|---|---|
| (1) To public officials for: |  |  |
| Sales Tax | $ N/A | $ 1827.13 |
| Filing Fees (Notation and Release of Lien) | $ N/A | $ 23.50 |
| Title Application, Transfer & Registration | $ N/A | $ 69.50 |
| (2) To property insurance company for coverages checked below (actual cash value) | $ N/A | $ N/A |
| $ N/A Deductible Comprehensive |  |  |
| $ N/A Deductible Collision |  |  |
| ☐ Fire, Theft and Combined Additional Coverage |  |  |
| (3) To liability insurance company | $ N/A | $ N/A |
| (4) To N/A | $ N/A | $ N/A |
| (5) To FIDELITY FOR: SVC CONTR | $ N/A | $ 1782.00 |
| (6) To N/A | $ N/A | $ N/A |
| (Subtotal for computing credit insurance premium a + f(1) through (6) $ 31746.13 ) |  |  |
| (7) To credit life insurance company | $ N/A | $ N/A |
| (8) To credit accident and sickness insurance company | $ N/A | $ N/A |

 Total Amount Paid to Others Which is Being Financed (Seller may be retaining a portion of this amount) (f) $ 3702.13
(g) Amount Financed (e + f) ......................................................... (g) $ 31746.13
(h) Finance Charge .................................................................... (h) $ 7620.23
(i) Total of Payments (g + h) ....................................................... (i) $ 39366.36
(j) Total Sale Price (d + i) ........................................................... (j) $ 45366.36

### 3. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | Amount Financed The amount of credit provided to me or on my behalf | Total of Payments The amount I will have paid after I have made all payments as scheduled. | Total Sale Price The total cost of my purchase on credit, including my downpayment of $ 6000.00 | ("e" means an estimate) |
|---|---|---|---|---|---|
| 7.90 % | $ 7620.23 | $ 31746.13 | $ 39366.36 | $ 45366.36 |  |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | $ 596.46 | MONTHLY BEGINNING 11/07/2008 UNTIL PAID IN FULL |
|  | $ N/A |  |

Security. I am giving a security interest in the goods being purchased.
Late Charge. If a payment (other than the final payment) is not paid on or before the 10th day after its due date, I may be charged $ 10.00 or 5 % of the unpaid amount, whichever is less.
Prepayment. If I pay off early, I will not have to pay a penalty.
I should see my contract documents for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

### 4. SECURITY AGREEMENT

I grant to Seller a security interest in the goods described above, and all accessions to and proceeds of such goods ("Collateral"). The Collateral secures performance of all my obligations in this Agreement and all extensions, modifications and renewals of them ("Obligations").

### 5. COVENANTS

(a) Ownership and Purpose. Acting alone, I may grant a security interest in the Collateral. The Obligations under this Agreement are incurred and the Collateral is acquired primarily for personal, family or household purposes.
(b) Title. Vehicle will be ☒ titled in Wisconsin ☐ titled in N/A _____ ☐ not titled.
(c) Location. The Collateral will be kept at the address below Section 7, or if not, at: _____
 (INCL NO. STREET)   (CITY OR TOWN)   (STATE)
Such location shall not be changed without providing at least 30 days prior written notice of the change to Seller, but I intend that the Collateral, wherever located, is covered by this Agreement.
(d) Marital Information. For Wisconsin resident only: I am ☒ married ☐ unmarried ☐ legally separated. If I am married and my spouse is not signing below the name of my spouse is _____ and my spouse resides at ☒ the address shown below Section 7 or at ☐ _____
(e) Marital Purpose. If I am a married Wisconsin resident, the obligation evidenced by this Agreement is being incurred in the interest of my marriage or family.

X /s/ signature
 CUSTOMER

(f) Name and Address. My legal name is as set forth below Section 7. The address of my principal residence is as set forth below Section 7. I will not change my legal name or address without providing at least 30 days prior written notice of the change to Seller.
(g) Additional Covenants. I shall observe and comply with the Additional Provisions on the reverse side and shall not permit an event of default to occur.

### 6. INSURANCE

(a) CREDIT LIFE AND CREDIT ACCIDENT AND SICKNESS INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS I SIGN AND AGREE TO PAY THE ADDITIONAL COST. I want the insurance at the cost(s) shown below for the term of the Agreement (or N/A months, whichever is less) subject to terms and conditions of separate policy or certificate of insurance.
Credit Life Insurance $ N/A  Credit Accident & Sickness Insurance $ N/A

X _____  X _____
 INSURED   INSURED

X _____  X _____
 JOINT INSURED   JOINT INSURED

(c) I MAY OBTAIN PROPERTY AND LIABILITY INSURANCE FROM ANYONE I WANT THAT IS REASONABLY ACCEPTABLE TO SELLER. If I got the insurance from Seller, I will pay $ N/A for estimated term of N/A months.
(d) WARNING: Unless an amount appears on line (f)(3) of Section 2, insurance coverage hereunder is not public liability insurance and does not protect the driver of the vehicle from liability for damages resulting from negligent use of the vehicle.

(b) DEBT CANCELLATION COVERAGE, SPECIFICALLY CALLED GUARANTEED AUTOMOBILE PROTECTION ("GAP"), IS NOT REQUIRED TO OBTAIN CREDIT AND GAP WILL NOT BE PROVIDED UNLESS I ELECT SUCH COVERAGE AND SIGN AND AGREE TO PAY THE ADDITIONAL COST. I elect GAP and agree to pay the cost shown below for the original term of this Agreement (or N/A months, whichever is less), subject to terms and conditions of the separate GAP election or description of coverage. GAP coverage cost is $ N/A
I acknowledge receipt of the description of GAP coverage separately provided to me.

X /s/ signature
 CUSTOMER   CUSTOMER

### 7. PERSONS BOUND

"I", "my", "me" and "mine" includes each customer who signs this Agreement and our obligations are joint and several, except that _____ (NAME) signs below solely to grant a security interest in the Collateral. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns. This Agreement includes the Additional Provisions on the reverse side. I have received a completed copy of this Agreement.

The Annual Percentage Rate may be negotiable with Seller. Seller may assign this Agreement and retain its right to receive a part of the Finance Charge.

| NOTICE TO CUSTOMER | (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF FINANCE CHARGE. |
|---|---|

Dated 09/23/2008

WILDE HONDA _____
 SELLER   (SEAL) X /s/ signature   (SEAL)
By: /s/ Antonio Mark _____    CUSTOMER
 AUTHORIZED SIGNATURE  KATHERINE A KIRKBRIDE
Seller's Address: 1710 HWY 164
 X /s/ signature   (SEAL)
WAUKESHA WI 53186   CUSTOMER
 STEVEN A KIRKBRIDE

This Agreement may be assigned to (Assignee): _____
Customer's Address: W277N1644 LAKEVIEW DR, WAUKESHA WI
Type or print name signed above.

PART 1 - ORIGINAL BANK COPY

## 6. ADDITIONAL PROVISIONS

(a) **Maintenance of Collateral.** I shall maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests prior in right to those of Seller; defend it against all claims and legal proceedings by persons other than Seller; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise transfer or dispose of it or permit it to become a fixture or accession to other goods except as specifically authorized in this Agreement or in writing by the Seller; and not permit it to be used in violation of any applicable law, regulation or policy of insurance, the violation of which could result in loss or damage to any Collateral or impairment of the insurance on it. Loss of or damage to the Collateral shall not release me from any of the Obligations.

(b) **Insurance.** If the Collateral is of a value of $600 or more, and the amount financed (exclusive of insurance charges) is $900 or more, I shall keep all Collateral and Seller's interest in it, insured for all risks of physical damage to or loss of the Collateral throughout the term of this Agreement and any renewals, extensions or modifications of it under policies with such provisions, for such amounts (not more than the value of the Collateral or the aggregate outstanding balance of the Obligations, whichever is less) and by such insurers as shall be reasonably satisfactory to Seller from time to time. I shall furnish satisfactory evidence of such insurance to Seller. Subject to Seller's satisfaction, I am free to select the insurance agent or insurer through which such insurance is obtained by me. I assign (and direct any insurer to pay) to Seller the proceeds of all such insurance and any premium refund and authorize Seller to endorse in my name any instrument for such proceeds or refund and, at the option of Seller, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to me. Seller is authorized, in my name or otherwise, to make, adjust and/or settle claims under any credit insurance financed by Seller and any insurance on the Collateral, or cancel the same after the occurrence of an event of default and giving any prior notice required by the Wisconsin Consumer Act. If I fail to keep any required insurance on the Collateral, Seller may purchase such insurance for me, such insurance may be acquired by Seller solely to protect the interest of Seller (and will not cover my equity in the Collateral), and my obligation to repay Seller shall be in accordance with Section 6(e).

(c) **Inspection of Collateral.** Seller is authorized to examine the Collateral wherever located at any reasonable time or times; and I shall assist in making any such inspection.

(d) **Maintenance of Security Interests.** To the extent not prohibited by law, I shall pay all expenses and, upon request, deliver any document and take any action reasonably deemed advisable by Seller to preserve the Collateral or to establish, evidence, determine and maintain priority of, perfect, continue perfected, terminate and/or enforce Seller's interest in it or rights under this Agreement. I authorize Seller to file Uniform Commercial Code financing statements describing the Collateral and amendments to such financing statements and ratify any such financing statement or amendment filed prior to the date of this Agreement.

(e) **Authority of Seller to Perform for Me.** Seller may perform or cause to be performed any of my duties set forth in this Agreement with respect to preserving or insuring the Collateral, including without limitation signing my name or paying any amount so required, if I fail to perform any of such duties after the written notice to me and a reasonable opportunity for me to perform, if any, required by law. The costs of Seller's performance shall be one of the Obligations secured by this Agreement, shall be payable by me upon demand and shall bear interest from the date of expenditure by Seller to the date of payment by me at the default rate disclosed on the front of this Agreement.

(f) **Ability to Pay.** I shall not take any action or permit any event to occur which materially impairs my ability to pay any of the Obligations when due. Such events may include, without limitation, the fact that I, my spouse or any surety of the Obligations dies, changes marital status or domicile or becomes insolvent or the subject of bankruptcy or other insolvency proceedings.

(g) **Default.** Upon the occurrence of any one or more of the following Events of Default:
  (1) **Payments.** (i) If the interval between scheduled payments is 2 months or less, to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the due dates or the failure to pay the first or last payment within 40 days after its due date; (ii) if the interval between scheduled payments is more than 2 months, to have all or any part of one scheduled payment which has remained unpaid for more than 60 days after its due date; or (iii) the failure to pay the only scheduled payment within 40 days after its due date;
  (2) **Nonperformance.** I fail to observe or perform any of my other covenants or duties contained in this Agreement if this failure materially impairs the condition, value or protection of or Seller's right in any Collateral, or materially impairs my ability to pay any of the Obligations when due; or
  (3) **False Statement.** I made a material false statement in my credit application to Seller that preceded this Agreement;

Seller shall have all of the rights and remedies for default provided by applicable law and this Agreement. With respect to such rights and remedies:
  (4) **Acceleration.** Each Obligation as to which an Event of Default has occurred shall, at the option of Seller and without further notice or demand, become immediately payable unless notice to me and an opportunity to cure is required by §425.105, Wis. Stats., and, in that event, such Obligation shall become payable if such default is not cured as provided in that statute, within 15 calendar days after mailing of such notice to me;
  (5) **Repossession.** Unless the Collateral is removed from Wisconsin under §421.201(5), Wis. Stats., abandoned under §425.207(2), Wis. Stats., or Seller has perfected its right to take possession of the Collateral consisting of a motor vehicle under §425.206(1)(d), Wis. Stats., I have a right to a court hearing on the issue of default before any repossession of any Collateral, but by surrendering the Collateral, I waive such right.
  (6) **Assembling Collateral.** After Seller has the right to possession of Collateral, Seller may require me to assemble the Collateral and to make it available to Seller at a place designated by Seller which is reasonably convenient to both parties;
  (7) **Notice of Disposition.** Notice, when required by law, mailed to me at least 10 calendar days (counting the day of mailing) before the date of a proposed disposition of the Collateral is reasonable notice;
  (8) **Expenses and Application of Proceeds;** Seller may recover from me and the proceeds of disposition any expenses incurred in taking possession, holding, preparing for disposition and disposing of the Collateral (provided, however, Seller has no obligation to clean-up or otherwise prepare the Collateral for sale) to the extent permitted by the Wisconsin Consumer Act. After deduction of such expenses, Seller shall apply the proceeds of disposition to the Obligations in such order and amounts as it elects to the extent permitted by the Wisconsin Consumer Act; and
  (9) **Waiver.** Seller may waive any default without waiving any other subsequent or prior default by me.

(h) **Interpretation.** The validity, construction and enforcement of this Agreement are governed by the internal laws of Wisconsin, except that recovery of Collateral shall be governed by the law of the state in which the Collateral is located at the time of recovery to the extent authorized by §421.201(5), Wis. Stats. All terms not otherwise defined have the meanings assigned to them by the Wisconsin Uniform Commercial Code and the Wisconsin Consumer Act. All references in this Agreement to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Unless otherwise required by the Wisconsin Consumer Act, invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions.

(i) **Miscellaneous.** Without affecting any liability under this Agreement, Seller may, without notice, grant renewals or extensions, accept partial payments, release or impair any security interest or lien in collateral security for the Obligations or agree not to sue any party liable on this Agreement. Presentment, protest, demand and notice of dishonor are waived. I acknowledge that Seller has not made any representations or warranties with respect to, and that Seller does not assume any responsibility to me for, the collectability or enforceability of this Agreement or the financial condition of any of us. Each of us has independently determined the collectability and enforceability of this Agreement. This Agreement is intended by Seller and me as a final expression of the Obligations and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Agreement. This Agreement may not be supplemented or modified except in writing. This Agreement benefits Seller, its successors and assigns, and binds me and my heirs, personal representatives, successors and assigns.

(j) **Defenses Against Assignee.**

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## ASSIGNMENT

Seller assigns all rights and interest in this Agreement, Obligations and Collateral to Assignee.

1. **Warranties.** Seller warrants:
   (a) The Agreement is genuine and legally enforceable according to its terms; and no debtor was a minor or incompetent when it was executed;
   (b) All statements contained in the Agreement and the related purchase agreement and invoice delivered to Assignee are true and correct, contain no misrepresentation, and constitute the only agreement with respect to the Collateral; Seller has no notice of any matters not disclosed to Assignee which might impair any debtor's credit or equity in the Collateral; the disclosed cash downpayment and trade-in were actually received by Seller; Seller has not made and will not make any advance to debtor(s); Seller has no agreement with debtor to separately finance or impose finance charges on or refinance any pickup payment or to defer payment of a portion of the downpayment to a date later than due date of the second installment; and the amount of any factory or manufacturer rebates are accurately and separately described in the Agreement.
   (c) The Agreement and transactions out of which it arose comply with applicable laws and regulations; Seller has performed or will perform all its obligations to debtor(s); and no debtor has, or has asserted, any defense, set-off or counterclaim to debtor's liability under the Agreement or the Obligations.
   (d) At the time of sale Seller had full authority to sell the Collateral to debtor(s) free of any security interest or other encumbrances; and the Collateral has been delivered to and accepted by debtor(s) within 10 days of the Agreement date; and the security interest created by this Agreement is the only security interest in or encumbrance on the Collateral.
   (e) Within 10 days of delivery of the Collateral to debtor(s), Seller perfected or will perfect a first security interest in the Collateral.
   (f) Seller has full authority to assign this Agreement to Assignee; Seller will in addition to the provisions of section 1(e) above take steps Assignee requests to perfect the security interest created by the Agreement and to designate Assignee as secured party of record; and Assignee's interest in the Agreement is not subordinate to any security interest or other encumbrance.

2. **Authority of Assignee.** Assignee may, without notice and without impairing Assignee's right against Seller, in the name of Seller or otherwise, take all actions and legal proceedings deemed advisable by Assignee with respect to the Agreement, the Obligations or the Collateral, including without limitation, modifying, extending or compromising any terms, discharging or releasing any person liable or releasing any security.

3. **Non-Liability of Assignee.** Assignee has no duty to perfect any security interest in the Collateral, to enforce any rights of Seller or to preserve rights under the Agreement or the Obligations against prior parties.

4. **Remedies of Assignee.** If:
   (a) Seller has executed this assignment under A below and if (i) any warranty of Seller is false or breached, or (ii) any claim is made that Assignee has not acquired the Agreement in good faith as defined in §422.407, Wis. Stats.; or
   (b) Seller has executed this assignment under B below and if (i) any warranty of Seller is false or breached, or (ii) Assignee receives notice of a complaint, claim or defense of debtor against Seller or Assignee; or
   (c) Seller has executed this assignment under C below and if (i) debtor fails to make a payment when due, or to perform or rectify breach of any other covenant in the Agreement or Obligations, or (ii) any warranty of Seller is false or breached, or (iii) Assignee receives notice of a complaint, claim or defense against Seller or Assignee;

then Seller shall, upon request of Assignee, pay the Assignee the full amount unpaid (less Assignee's unearned charges), plus expenses incurred by Assignee in endeavoring to collect or enforce the Agreement and this assignment (subject to provisions of any separate written agreement between Assignee and Seller respecting the purchase of the Agreement); and Seller indemnifies and agrees to defend and hold Assignee harmless from any loss, liability, penalty, claim, damage or expense (including reasonable attorneys' fees) claimed or incurred by reason thereof or claimed or incurred under section 5(j). Upon such payment Assignee will, at the request of Seller, reassign the Agreement to Seller without recourse or warranties whatsoever.

| | |
|---|---|
| A. (Without recourse except as provided in 4(a) above) | B. (Without recourse except as provided in 4(b) above) |
| _____ (SEAL) | **WILDE AUTOS, INC** |
| By _____ | 1710 HWY 164 (SEAL) |
| AUTHORIZED SIGNATURE | WAUKESHA, WI 53139 |
| | By _____ |
| | AUTHORIZED SIGNATURE |
| | C. (With full recourse as provided in 4(c) above) |
| | _____ (SEAL) |
| Dated: _____ | By _____ |
| | AUTHORIZED SIGNATURE |

# PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

**B.   INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.